1  JEFFER MANGELS BUTLER & MITCHELL LLP
   ROBERT B. KAPLAN (Bar No. 76950)
2  MARIANNE DICKSON (Bar No. 249737)
   Two Embarcadero Center, 5th Floor
3  San Francisco, CA 94111-3813
   Telephone: (415) 398-8080
4  Facsimile: (415) 398-5584

5  Attorneys for MECHANICS BANK

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

| 11 | In re | CASE NO. 11-12824 |
|---|---|---|
| 12 | BARREL STOP WINERY, LLC, dba DOMINARI, | CHAPTER 11 |
| 13 | | |
| 14 | Debtor and Debtor-in-Possession. | **STIPULATION FOR USE OF CASH COLLATERAL** |

19

20         This Stipulation for Use of Cash Collateral ("Stipulation") is made by and among

21  Barrel Stop Winery, LLC, a California limited liability company (the "Debtor" or "Borrower") and

22  Mechanics Bank ("Bank"), in reference to and in consideration of the following:

23                                    **R E C I T A L S**

24         A.    On July 28, 2011 (the "Petition Date"), the Debtor filed a voluntary petition

25  for relief under Chapter 11 of the United States Bankruptcy Code initiating the above-entitled

26  Chapter 11 case (the "Case").

27  ///

28  ///

**The Loan Documents**

B.     On or about February 12, 2010, Borrower made, executed, and delivered to Bank that certain Promissory Note in the original principal sum of $3,366,084.00 ("Note No. 1").

C.     On or about February 12, 2010, Borrower made, executed, and delivered to Bank that certain Business Loan Agreement which, <u>inter alia</u>, set forth the terms on which the Bank was willing to make the Loan to the Borrower as more specifically set forth therein (the "Loan Agreement").

D.     In order to secure repayment of all outstanding Indebtedness owed by Borrower to the Bank and the performance of any and all obligations under Note No. 1, the Loan Agreement, the Related Documents, and the Deed of Trust (as hereinafter defined) the Borrower, Jurgen W. Schutz, and Marie A. Schutz, as trustor, made, executed and delivered to Macdonald Auxiliary Corporation, as trustee, for the benefit of Bank, as beneficiary, that certain first priority Deed of Trust dated February 12, 2010 (the "Deed of Trust"), with respect to the Property which includes the real property commonly known as 620 Trancas Street, Napa, California. The Deed of Trust also granted the Bank a continuing security interest in the Personal Property and Rents, as more specifically set forth therein. The Deed of Trust was recorded in the Official Records of the Napa County Recorder's Office on February 26, 2010, as instrument no. 2010-0004249.

E.     Borrower made, executed and delivered to Bank that certain Business Loan Agreement (Asset Based) dated August 10, 2007 ("Original LOC BLA").

F.     On or about August 10, 2007, Borrower made, executed and delivered to Bank that certain Promissory Note in the original principal sum of $400,000.00 ("Note No. 2").

G.     Borrower made, executed and delivered to Bank that certain Change in Terms Agreement dated September 10, 2008, which, <u>inter alia</u>, amended certain provisions of Original LOC BLA, and pursuant to which the maturity date of the Note No. 2 was extended to August 10, 2009 ("Change in Terms Agreement No. 1").

H.     Borrower made, executed and delivered to Bank that certain Business Loan Agreement (Asset Based) dated September 10, 2008 ("LOC BLA").

I.     Borrower made, executed and delivered to Bank that certain Change in

1217172v4                                           - 2 -          STIPULATION FOR USE OF CASH COLLATERAL

Case: 11-12824    Doc# 12    Filed: 08/09/11    Entered: 08/09/11 07:01:13    Page 2 of 19

Terms Agreement dated June 18, 2009, which changed the interest rate on the Note No. 2 and amended certain provisions of the LOC BLA ("Change in Terms Agreement No. 2").

J. Borrower made, executed and delivered to Bank that certain Change in Terms Agreement dated August 18, 2009, pursuant to which the maturity date of the Note No. 2 was extended to October 10, 2009 ("Change in Terms Agreement No. 3").

K. Borrower made, executed and delivered to Bank that certain Change in Terms Agreement dated November 9, 2009, pursuant to which the maturity date of the Note No. 2 was extended to December 10, 2009 ("Change of Terms Agreement No. 4").

L. Borrower made, executed and delivered to Bank that certain Change in Terms Agreement dated March 15, 2010, pursuant to which the maturity date of the Note No. 2 was extended to May 10, 2010 ("Change of Terms Agreement No. 5"). Note No. 2, Original LOC BLA, Change in Terms Agreement No. 1, BLA, Change in Terms Agreement No. 2, Change in Terms Agreement No. 3, Change in Terms Agreement No. 4, and Change in Terms Agreement No. 5, will be collectively referred to as the "LOC Loan Documents".

M. In order to secure repayment of all outstanding Indebtedness owed by the Borrower to the Bank, the Borrower executed that certain Commercial Security Agreement dated as of August 10, 2007 ("Security Agreement") pursuant to which the Bank was granted a security interest in the Collateral, as more specifically set forth therein.

N. Note No. 1, Loan Agreement, Deed of Trust, Security Agreement and all other documents executed by Borrower in favor of the Bank, are hereinafter collectively referred to as the "Loan Documents. All capitalized terms not otherwise defined in this Stipulation shall have the meanings ascribed to them in the LOC Loan Documents and the Secured Loan Documents. The LOC Loan Documents and the Secured Loan Documents are hereinafter collectively referred to as the "Loan Documents".

O. The Bank's security interest in the Collateral which is the subject of the Security Agreement was perfected by the filing of a UCC-1 Financing Statement at the California Secretary of State's Office on August 15, 2007.

///

**Events of Default Under the Secured Loan Documents and LOC Loan Documents**

P. The Bank contends Events of Default have occurred under the terms of the Secured Loan Documents as a result of, <u>inter alia</u>, (i) the failure of the Borrower to pay the monthly payment of $23,994.57 required to be paid to the Bank pursuant to Note No. 2 on September 10, 2010, and on the 10th day of each and every month thereafter, (ii) the failure of the Borrower to pay when due all real property taxes levied against the Property.

Q. The Bank contends Events of Default have occurred under the terms of the LOC Loan Documents as a result of, <u>inter alia</u>, the failure of the Borrower to pay all outstanding obligations due and owing to the Bank thereunder on May 10, 2010.

R. As a result of the occurrence of the alleged Events of Default under the Secured Loan Documents, on December 22, 2010, the Bank accelerated all outstanding obligations owed by the Borrower to Bank under the Secured Loan Documents and demanded repayment thereof.

S. The Bank contends there remained due, owing and payable to Bank pursuant to the Secured Loan Documents, as of December 20, 2010 the principal sum of $3,357,797.82 plus accrued and unpaid interest, late charges, attorneys' fees and costs and other amounts which are due and owing with respect to the Secured Loan Documents.

T. The Bank contends that remained due, owing and payable under the terms of the LOC Loan Documents as of January 10, 2011, the principal sum of $304,965.00, plus accrued and unpaid interest, late charges, attorneys' fees and costs and other amounts which are due and owing with respect to the LOC Loan Documents.

U. The Bank contends that Bank has duly performed all of the conditions precedent that are required to be performed on its part under the terms of the Secured Loan Documents and the LOC Loan Documents.

V. On March 2, 2011, the Bank caused to be recorded a Notice of Default and Election to Sell Under Deed of Trust in the Official Records of the Napa County Recorder's Office thereby initiating nonjudicial foreclosure proceedings pursuant to the Deed of Trust. Thereafter, on June 7, 2011, the Bank caused to be recorded a Notice of Trustee's Sale Under Deed of Trust in the

Official Records of the Napa County Recorder's Office setting a trustee's sale pursuant to the Deed of Trust for July 7, 2011, which trustee's sale was postponed to July 28, 2011.

**Negotiations Over The Terms of this Stipulation**

W. The Debtor and the Bank desire to enable the continued operation of the Property through the use of the Bank's cash collateral in accordance with the terms, provisions and conditions of this Stipulation.

NOW, THEREFORE, the parties hereby stipulate and agree as follows:

**AGREEMENT**

1. <u>Recitals</u>. The recitals are incorporated herein by this reference. The parties agree that the matters set forth in the Recitals are true and correct to the best of their knowledge.

2. <u>Cash Collateral Defined</u>. The term "Cash Collateral" as that term is used in this Stipulation shall include the definition of that term as defined in 11 U.S.C. § 363(a) and the Rents generated from the Property and the Collateral both prior and subsequent to the Petition Date.

3. <u>Establishment of Account</u>. The Debtor shall establish a debtor in possession account at JP Morgan Chase Bank, Account No. 957836299 into which the Debtor shall deposit all Cash Collateral in kind and shall be designated as its operating account ("Operating Account") and from which the Debtor shall utilize to pay all monthly reasonable, ordinary and necessary expenses of maintaining and operating the Property, in accordance with the terms of this Stipulation and in order to make payments to the Bank. All funds deposited by the Debtor into the Operating Account shall be and remain the Bank's Cash Collateral.

4. <u>Payment of Operating Expenses and Bank Loan Payments.</u>

(a) For the period from the Petition Date through and including August 31, 2011 (the "First Interim Period"), the Debtor shall be entitled to use the Cash Collateral, without further order of the Court or written permission of the Bank, to pay the reasonable, ordinary and necessary expenses of operating and maintaining the Property as they become due solely for the items and in the amounts set forth in the budget attached hereto as <u>Exhibit 1</u> and incorporated herein by this reference (hereinafter referred to as the "First Interim Budget").

(b) The Debtor's use of Cash Collateral is expressly limited to the

categories in the First Interim Budget approved under this Stipulation and any Successor Budget (as that term is hereinafter defined) approved under this Stipulation for subsequent periods, except that expenses for a particular category may be 5% higher or lower for a particular month than those specified in the First Interim Budget or subsequent Successor Budget so long as the total expenses for the applicable period shall not vary by more than 10% from the total amount budgeted for the period for that category.

(c) The Debtor shall pay to the Bank in accordance with the terms of the Loan Documents the following payments as provided for in the First Interim Budget and as provided for in any Successor Budget approved in the Stipulation in the following amounts and on the following dates: (i) an adequate protection payment in the sum of $2,408.00 on August 10, 2011 which shall be applied by the Bank to past due interest owed pursuant to the Note No. 2 at the non-default rate, (ii) an adequate protection payment in the sum of $29,156.87 on August 25, 2011 which shall be applied by the Bank to past due interest due and owing pursuant to Note No. 1 at the non-default rate, and (iii) any additional monthly payments to the Bank provided for in any Successor Budgets approved under this Stipulation and applied by the Bank to the Debtor's obligations under the Loan Documents as provided for therein. Nothing contained in this Stipulation shall prejudice or limit in any way the Bank's rights to recover interest at the Default Rate, Late Charges, or any other amounts due under the Loan Documents, or the Debtor's right to claim that said amounts are not owed to the Bank pursuant to the Loan Documents.

(d) The Debtor shall further be authorized to pay quarterly payments due and owing to the United States Trustee established under 28 U.S.C. § 1930(a)(6). The first payment shall be due shortly after September 30, 2011.

5. <u>Extension of Use of Cash Collateral by Stipulation after First Interim Period</u>.

(a) On or before August 20, 2011 and continuing on the 20th day of each and every month thereafter or the first business day after the 20th of the month if the 20th of the month is not a business day, the Debtor shall deliver to the Bank a proposed budget for the use of Cash Collateral for the following calendar month (the "Proposed Successor Budget"). The Proposed Successor Budget shall, among other things, set forth the proposed dates and amounts of

Cash Collateral to be paid by the Debtor to the Bank for application to the amounts due under the Loan Documents, if any. The Proposed Successor Budget shall also identify with particularity the nature and amount of all expenses which the Debtor seeks authority to pay from Cash Collateral. The Bank shall have 10 calendar days from its receipt of the Proposed Successor Budget to approve or object to the Proposed Successor Budget, in its sole discretion, and shall advise the Debtor, in writing, of its decision on or before 10 calendar days have elapsed from the date of the Bank's receipt of the Proposed Successor Budget. In the event the Bank fails to deliver to the Debtor, within such 10 calendar day period, written objections to the Proposed Successor Budget, the Proposed Successor Budget shall be deemed to have been approved by the Bank and the Proposed Successor Budget shall become effective on or after the first day of the following month and shall be governed by the terms of this Stipulation (the "Successor Budget"). Alternatively, if the Bank timely delivers a written objection to the Proposed Successor Budget, the Debtor shall have the right to notice a motion in this Court, with notice to all of the parties-in-interest, with copies of all pleadings to be served on the date of their filing on the parties-in-interest by electronic mail with a courtesy copy delivered to the Court's chambers upon the filing of any such pleadings, seeking to further use Cash Collateral and Bank reserves all rights it has under applicable law to oppose any such motion.

(b) The Proposed Successor Budget required to be delivered to the Bank pursuant to this section of this Stipulation shall be sent by electronic mail to Evan_Siemens@mechanicsbank.com and to Robert B. Kaplan, Esq. at: rbk@jmbm.com. The Bank's response to the Proposed Successor Budget shall be sent by electronic mail to Michael C. Fallon, Esq. at: MCFallon@fallonlaw.net.

6. <u>No Insider Payments</u>. Except as authorized in this Stipulation, the First Interim Budget, or any Successor Budget(s), the Debtor shall not make any payments of Cash Collateral to any insider of the Debtor as that term is defined in 11 U.S.C. § 101(31) except upon the Bank's prior written consent or the entry of an order of the Bankruptcy Court upon motion after notice and a hearing to the extent required by law.

7. <u>No Payments to Creditors</u>. Except as authorized in this Stipulation, no

1217172v4 - 7 - STIPULATION FOR USE OF CASH COLLATERAL

Case: 11-12824    Doc# 12    Filed: 08/09/11    Entered: 08/09/11 07:01:13    Page 7 of 19

payments of any kind to any person or entity holding a lien on the Property and/or Collateral junior to the interests of the Bank or to any pre-petition unsecured creditors of the Debtor shall be made, except by order of the Bankruptcy Court upon motion of the Debtor after notice and a hearing to the extent required by law.

8. <u>Replacement Lien</u>. Without limitation on the effect of the Bank's Loan Documents, and as adequate protection for the use of Cash Collateral in addition to the monthly payments and restrictions on the Debtor's use of Cash Collateral provided for herein, the Bank shall be and hereby is granted a replacement lien to secure any diminution in the value of Cash Collateral caused by the Debtor's use thereof, and security interest in, all post-Petition Date Rents (subject to the uses permitted by this Stipulation), Collateral, income, issues, proceeds and profits produced by and/or derived from the Property and/or Collateral, which replacement lien and security interest shall have the same priority, extent and validity as the Bank's security interest or other interest in the Cash Collateral used by the Debtor provided, however, that said replacement lien shall be subordinate to the allowed and approved fees and costs of the Trustee, if any, appointed in any succeeding Chapter 7 case. The replacement lien and security interest granted herein are valid, enforceable and fully perfected, and no filing or recordation or any other act in accordance with any applicable local, state or federal law is necessary to create or perfect such lien and security interest. The Bank may, in its sole discretion, file such financing statements, notices of liens or similar instruments. If the Bank chooses, in its sole discretion, to file such financing statements, notices of liens or similar instruments, all such documents shall be deemed to have been filed or recorded on the Petition Date whether or not so filed or recorded on such date, and the automatic stay of 11 U.S.C. § 362 of Bankruptcy Code shall be deemed vacated and modified to permit the filing of any of the foregoing.

9. <u>Representations and Warranties of the Debtor</u>. Debtor represents and warrants that, since the Petition Date, no Rents and/or proceeds generated from the Property, Collateral or Cash Collateral has been paid to any "insider" of the Debtor, as that term is defined in 11 U.S.C. § 101(31).

10. <u>Superpriority Claims</u>. In addition to the grants of liens and security interests

provided for in this Stipulation, the Bank shall be entitled to administrative expense claims under 11 U.S.C. §§ 503(b) and 507(a)(1) with a super priority status pursuant to 11 U.S.C. § 507(b) to the extent that the Bank is not adequately protected with respect to the Debtor's use of Cash Collateral.

11. <u>Waiver of 11 U.S.C. § 506(c)</u>. In order to provide further adequate protection to the Bank with respect to Debtor's use of Cash Collateral, at no time during the First Interim Period or any subsequent times that the Debtor is authorized to use Cash Collateral pursuant to the terms of this Stipulation, shall the surcharge provisions of 11 U.S.C. § 506(c) be imposed on or against the Bank, the Bank's Cash Collateral or the Bank Property.

12. <u>Accountings and Reports</u>.

(a) Commencing August 21, 2011 and continuing on the 21st day of each and every month thereafter, the Debtor shall send to the Bank and counsel for Bank at the electronic mail addresses set forth in Section 5(b) above copies of all reports, statements, and/or accountings delivered by the Debtor to the United States Trustee as required under the local rules and practice of the Bankruptcy Court for the Northern District of California, including but not limited to the real property questionnaire, interim statements and operating reports. If the Debtor fails to prepare and file the statements, reports and/or accountings required by the United States Trustee, the Debtor shall nevertheless send to the Bank and counsel for the Bank on or before the 21st day of each month a detailed accounting of the prior month's income and expenses, which accounting shall include all information required in the United States Trustee's reports, statements and accountings at the electronic mail addresses set forth at Section 5(b) above;

(b) In addition to the reports filed with the United States Trustee's Office, commencing August 21, 2011 and continuing on the 21st day of each and every month thereafter, the Debtor shall send to the Bank and counsel for the Bank at the electronic mail addresses set forth in Section 5(b) above, copies of the Debtor's balance sheet, accounts receivable aging, accounts payable aging, income and expense statements and profit and loss statements for the preceding month and reports showing any variance between the First Interim Budget and any Successor Budget approved of by the Bank and the actual expenditures made by the Debtor of Cash Collateral for the preceding month;

(c) Commencing on Monday, August 8, 2011 and continuing on each Monday thereafter (or if Monday is a legal holiday, on the next business day thereafter), the Debtor shall send to the Bank and counsel for the Bank at the electronic mail addresses set forth in Section 5(b) above a report which contains a copy of each check written by the Debtor for the prior week and which shall contain a reference to the line item in the First Interim Budget and any Successor Budget approved of by the Bank for which the expenditure evidenced by the check is being made, a copy of the invoice being paid by each check, a weekly reconciliation of all expenditures made by the Debtor for the prior week compared to the Budget and an accounting of all deposits made by the Debtor to the Operating Account for the preceding week, including a copy of all deposit slips evidencing those deposits; and

(d) Commencing on August 21, 2011 and continuing on the 21st day of each and every month thereafter, the Debtor shall send to the Bank and the Bank's counsel at the electronic mail addresses set forth in Section 5(b) above a copy of the monthly statement received by the Debtor for the Operating Account for the preceding month, including copies of all checks, deposit slips and other information included with said monthly statement.

13. <u>Inspections</u>. No later than five business days following a written request from the Bank, the Debtor shall provide access to and make available such financial and operating information as representatives of the Bank shall reasonably request from time to time and which can reasonably be made available, including, without limitation, all books and records relating to the Property and the Collateral, which requests shall be made no more frequently than once every 30 days. Upon five days' written notice to the Debtor, the Bank shall be entitled to have its appraiser, environmental inspector or other third party inspector visit the Property and/or the Collateral to inspect and appraise the Property and the Collateral, and the Debtor shall cooperate in providing said appraiser and/or environmental inspector full access to the Property and the Collateral and shall provide the Bank with such financial information concerning the Property and the Collateral as the Bank may reasonably request.

14. <u>Termination of Use of Cash Collateral Upon Occurrence of Event of Default.</u>

(a) If a Stipulation Event of Default (as hereinafter defined) occurs under

- 10 -   STIPULATION FOR USE OF CASH COLLATERAL

1217172v4

Case: 11-12824   Doc# 12   Filed: 08/09/11   Entered: 08/09/11 07:01:13   Page 10 of 19

this Stipulation, the Bank shall give written notice of any such default to the Debtor and the Debtor's counsel via electronic mail at the addresses set forth in Section 5(b) (the "Default Notice"). The Debtor's rights to use Cash Collateral shall immediately cease after 2 business days have elapsed from the date of said Default Notice and the Bank shall thereafter have the right to take any action or exercise any right or remedy that the Bank possess under the Loan Documents, this Stipulation, or by applicable law all which rights are expressly preserved and retained, as are any rights, remedies and defenses of the Debtor. Notwithstanding the occurrence of a Stipulation Event of Default under this Stipulation , the Debtor shall be permitted to notice an expedited hearing in the above-entitled Court to resolve any disputes regarding whether a Stipulation Event of Default has occurred under this Stipulation. The Bank reserves all rights it has under applicable law to oppose any such request made by the Debtor.

(b) Notwithstanding any other provision contained herein, Debtor's authorization to use Cash Collateral pursuant to this Stipulation shall terminate immediately and automatically, without any obligation of the Bank to provide notice to the Debtor, upon the occurrence of any of the following (each a "Termination Event"): (i) entry of an Order by the Bankruptcy Court converting or dismissing the Debtor's Case; (ii) entry of an Order by the Bankruptcy Court appointing a Chapter 11 Trustee or Chapter 7 Trustee in the Debtor's Case; (iii) the reversal, vacatur, stay, amendment, supplementation or other modification of this Stipulation, without the Bank's written consent in its sole discretion; or (iv) entry of an Order granting the Bank relief from the automatic stay effect in the Case. Upon the occurrence of a Termination Event, the Bank shall have the right to take any action or exercise any right or remedy that the Bank possess under the Loan Documents, this Stipulation, or by applicable law all which rights are expressly preserved and retained, as are any rights, remedies and defenses of the Debtor.

15. <u>Events of Default by Debtor</u>. The occurrence of any one or more of the following events shall constitute a "Stipulation Event of Default" under this Stipulation: (i) the Debtor fails to timely and punctually perform any of its obligations in strict accordance with the terms hereof or otherwise defaults hereunder or breaches any provision hereof, including (A) the use and expense of disbursement of Cash Collateral except as expressly permitted hereunder; (B)

PRINTED ON RECYCLED PAPER

Jeffer Mangels Butler & Mitchell LLP

the failure to provide any report, document, or information to the Bank as required hereby; and (C) the failure to make any payment to the Bank as required hereby; (ii) any representation or warranty, express or implied, made by the Debtor in any certificate, report, expense statement, other financial statement, or other document delivered to the Bank after the Petition Date proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty, or statement not misleading) (for the avoidance of doubt, provision of a document to the Bank (A) by the Debtor constitutes an implied representation and warranty that the contents thereof is true and correct to the best knowledge of the Debtor; and (B) by or on behalf of the Debtor that is not what it appears to be shall be deemed a false and misleading representation and warranty); (iii) any person or entity obtains an Order permitting the use of the Cash Collateral without the Bank's written consent in its sole discretion; or (iv) the replacement lien granted to the Bank pursuant to Section 8 above ceases to be a valid and perfected first priority lien on the Bank's Collateral.

16. <u>No Waiver of Rights</u>. No delay or failure of either party to this Stipulation in exercising any right, power or privilege, or any single or partial exercise thereof, or any abandonment or discontinuance of steps to enforce such a right, power, or privilege, shall be deemed to be a waiver of any right, power, or privilege. The rights and remedies of the parties to this Stipulation are cumulative and not exclusive. Any waiver, permit, consent or approval of any kind by either party to this Stipulation of any breach or default hereunder, or any such waiver of any provision or condition hereof, or further extension of time, or modification or amendment hereof, must be in writing and shall be effective only to the extent set forth in writing. All parties hereto reserve all rights and remedies not otherwise inconsistent herewith, pursuant to the Bank's Loan Documents, the Bankruptcy Code and applicable law.

17. <u>Further Assurances</u>. All parties, at their expense, will execute, acknowledge, and deliver, or cause to be executed, acknowledged and delivered, all such additional instruments and documents and will take such further action as either party may from time to time reasonably request for the better assurance and preservation of the parties' rights hereunder.

18. <u>Assignability</u>. This Stipulation shall be binding upon and inure to the benefit

PRINTED ON RECYCLED PAPER

of the parties hereto and their respective successors and assigns.

19. <u>Binding on Trustee</u>. The terms and conditions of this Stipulation shall be res judicata and binding upon any Trustee appointed herein or in any case to which this Case may be converted.

20. <u>Other Remedies Available to the Bank</u>. The purpose of this Stipulation is to establish procedures for the monitoring and expenditure of the Cash Collateral. This Stipulation is made with an express reservation of rights by the Bank to pursue any and all rights and remedies the Bank may have under the Bankruptcy Code and the Bank's Loan Documents, including, but not limited to, seeking adequate protection of the Bank's interest in the Property and/or Collateral, relief from the automatic stay to foreclose on its interest in the Property and/or, or an order dismissing or converting the Case. Nothing contained in this Stipulation and the order thereon shall be deemed or construed to be an admission that the Bank is adequately protected. Moreover, except as otherwise expressly set forth in this Stipulation, nothing contained in this Stipulation and the order thereon shall be deemed or construed to limit in any way, any of the Debtor's legal rights or remedies in this bankruptcy proceeding or otherwise in accordance with applicable law.

21. <u>Additional Expenditures of Cash Collateral</u>.

(a) In the event the Debtor wishes to make an expenditure of Cash Collateral not expressly provided for in the First Interim Budget or any Successor Budget, the Debtor shall notify the Bank and the Bank's counsel immediately in writing of the amount and nature of the proposed expenditure at the electronic mail addresses set forth in Section 5(b) above and provide to the Bank such supporting documentation as may be reasonably necessary for the Bank to evaluate the necessity and propriety of the proposed expense (the "Additional Authorization Notice"). The Bank shall have seven (7) calendar days from its receipt of the Additional Authorization Notice to approve or object to the proposed expenditure, in its sole discretion, and shall advise the Debtor in writing at the electronic mail addresses set forth in Section 5(b) above of its decision on or before the seven (7) calendar days have elapsed from the date of the Bank's receipt of the Additional Authorization Notice. In the event the Bank fails to deliver to the Debtor, within such seven (7) calendar day period, a written objection to the Additional

1217172v4 - 13 - STIPULATION FOR USE OF CASH COLLATERAL

Authorization Notice, the proposed expenditure(s) identified in the Additional Authorization Notice shall be deemed to have been approved by the Bank, and the Debtor shall be permitted to expend Cash Collateral subject to the terms of this Stipulation as authorized by the Bank in writing. Alternatively, if the Bank timely delivers a written objection to the Additional Authorization Notice, the Bank shall specifically identify all reasons for which the objection is being made. The Debtor shall not use Cash Collateral to pay for any proposed expenditures to which the Bank has objected, but the Debtor shall be permitted to use Cash Collateral to pay that portion of any proposed expenditures to which the Bank has not objected. Nothing contained in this Section 21(a) shall be construed to limit the Debtor's ability to file a motion with the Bankruptcy Court on notice and hearing (on a regular or expedited basis) to request that the Bankruptcy Court permit the Debtor to make an additional expenditure of Cash Collateral. The Bank reserves all rights it has under applicable law to oppose any such motion made by the Debtor.

(b) To the extent the Debtor requires emergency approval of expenditures of Cash Collateral for critical operating expenses and repairs which are not expressly provided for in the First Interim Budget or any Successor Budget, the Debtor shall notify the Bank and the Bank's counsel immediately in writing, at the electronic mail addresses set forth in Section 5(b) above, regarding the amount and nature of such emergency expenditures, providing any supporting documentation that can reasonably be provided under the circumstances, and clearly identifying that the approval of such expenditures is being sought on an emergency basis (the "Emergency Authorization Notice"). The Bank shall have two (2) business days following its receipt of the Emergency Authorization Notice to approve or object to the proposed expenditure, in its sole discretion, and shall advise the Debtor in writing at the electronic mail addresses set forth in Section 5(b) above of its decision on or before the two (2) business day period has elapsed from the time of the Bank's receipt of the Emergency Additional Authorization Notice. In the event the Bank fails to deliver to the Debtor, within such two (2) business day period, written objections to the proposed emergency expenditures, such emergency expenditures shall be deemed to have been approved by the Bank. Alternatively, if the Bank timely delivers a written objection to the proposed emergency expenditure, the Bank shall specifically identify all reasons for which the objection is

being made. Nothing contained in this Section 21(b) shall be construed to limit the Debtor's ability to file a motion with the Bankruptcy Court on an expedited basis to request that the Bankruptcy Court permit the Debtor to use Cash Collateral for any emergency expenditure. The Bank reserves all rights it has under applicable law to oppose any such motion made by the Debtor.

22. <u>Neutral Construction</u>. Each of the parties hereto has been involved in the negotiation, review, and execution of this Stipulation, and each has had the opportunity to receive independent legal advice from attorneys of its choice with respect to the advisability of making and executing this Stipulation. In the event of any dispute or controversy regarding this Stipulation, the parties hereto shall be considered to be the joint authors of this Stipulation, and no provision of this Stipulation shall be interpreted against a party hereto because of authorship.

23. <u>Headings</u>. The parties acknowledge to one another that the headings set forth herein are for convenience only and shall not be used to limit, define, or interpret their rights and responsibilities hereunder.

24. <u>Integration</u>. Except as expressly provided in this Stipulation, this Stipulation is the final written expression and complete and exclusive statement of all of the agreements, conditions, promises and covenants between the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, negotiations, representations, understandings and discussions between the parties and/or their respective counsel with respect to the subject matter covered hereby. Any amendment or modification to this Stipulation, in order to be legally binding, must be in writing specifically referring to the Stipulation and signed by duly authorized representatives of both parties hereto.

25. <u>Execution</u>. Any party executing this Stipulation in a representative capacity is duly authorized and empowered to do so. This Stipulation may be executed in original, electronic or facsimile signatures and in counterpart copies, and this Stipulation shall be deemed fully executed and effective when all parties have executed and possess a counterpart, even if no single counterpart contains all signatures.

26. <u>Survival</u>.

    (a) Notwithstanding any termination of the Debtor's authority to use Cash

Collateral pursuant to the terms of this Stipulation, all claims, liens and security interest granted to the Bank pursuant to this Stipulation and the Loan Documents shall survive such termination and remain in full force and effect notwithstanding such termination.

(b) The provisions of this Stipulation and the actions taken pursuant hereto shall survive entry of any Order (i) appointing a Chapter 11 Trustee in the Case, (ii) converting the Case to a Chapter 7 or (iii) dismissing the Case and the terms and provisions of this Stipulation and all claims, liens and security interest granted to the Bank pursuant to the Stipulation and the Loan Documents shall continue in full force and effect notwithstanding entry of any such Order and the replacement lien set forth in Section 8 above and any superpriority claims the Bank obtains pursuant hereto pursuant to Section 10 above shall maintain the priority as provided for by this Stipulation, the Loan Documents until all obligations owed to the Bank are indefeasibly paid in full.

(c) Notwithstanding any stay, modification, reversal or vacation of any order approving this Stipulation, any indebtedness, obligation or liability incurred by Debtor pursuant to this Stipulation arising prior to the later of the effective date of such stay, modification, reversal or vacation or the Bank's receipt of notice thereof, shall be governed in all respects by the original provisions of this Stipulation, and the Bank shall be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein and all security interests, liens and priorities granted herein, with respect to such indebtedness, obligations or liabilities incurred or existing prior to such date, and with respect to the Debtor's use of Cash Collateral prior to such date. Without limiting the generality of the foregoing, in the event the Bankruptcy Court or any other court hereafter modifies any of the provisions of this Stipulation, such modification shall not affect the rights, remedies, liens and priorities of the Bank granted or acknowledged pursuant to this Stipulation with respect to the obligations and the pre-Petition Date indebtedness and any Cash Collateral which is used prior to any such modification.

27. <u>No Granting of Senior Liens</u>. Except as otherwise agreed to by the Bank in writing in its sole discretion, or authorized by an Order of the Bankruptcy Court pursuant to this Stipulation, Debtor shall be enjoined and prohibited from granting any mortgages, security interest

or liens and encumbrances including liens created under 11 U.S.C. § 364(d) which are senior to or on a parity with the Bank pre-Petition Date liens and security interest.

28. *Time is of the Essence*. Time is of the essence of any act or performance required to be performed by the Debtor pursuant to the terms of this Stipulation.

29. *No Third Party Beneficiaries*. No rights are intended to be created hereunder for the benefit of any third party or creditor or any direct or indirect incidental beneficiary except as specifically provided for in this Stipulation.

30. *Court Approval*. This Stipulation shall be submitted forthwith to the Bankruptcy Court for approval, and, in that regard, the Debtor may give such notice and opportunity to be heard as is required under the Federal Rules of Bankruptcy Procedure and other applicable law.

DATED: August 8, 2011          JEFFER MANGELS BUTLER & MITCHELL LLP

By: /s/ Robert B. Kaplan
    ROBERT B. KAPLAN, ESQ.
    Attorneys for MECHANICS BANK

DATED: August 8, 2011

/s/ Michael C. Fallon
MICHAEL C. FALLON, ESQ.
Attorneys for Debtor BARREL STOP WINERY, LLC, dba DOMINARI

- 17 -  STIPULATION FOR USE OF CASH COLLATERAL

1217172v4

# **EXHIBIT 1**

| Estimated 30 Day Cash Flow (August 2011) | | | Cash Basis | | |
|---|---|---|---|---|---|
| | | | | | |
| **Combined Position at Banks (less current Pmts)** | | | $ 17,459.00 | | |
| Cash (Tasting room) | | | $ 90.00 | | |
| Bottled Wine Sales - Retail | | | $ 20,000.00 | | |
| Bottled Wine Sales - Wholesale | | | $ 95,000.00 | | |
| Alternating Premise Clients Wine Sales | | | $ 1,000.00 | | |
| Custom Crush (x 60%) | | | $ 39,510.00 | | |
| Alternating Prop Fees | | | $ 3,700.00 | | |
| | | | | | |
| **Total Income + Cash in Bank** | | | $ 176,759.00 | | |
| | | | | | |
| Bulk wine purchase for Crush Customer | | | $ 14,850.00 | | |
| Crush Processing Expenses | | | $ 1,000.00 | | |
| Alternating Premise Clients Wine Sales | | | $ 850.00 | | |
| Grower Pmts | | | $ 6,000.00 | | |
| Bottling, Wine Sales, Glass, Cork, Foils | | | $ 57,633.00 | | |
| 1 Month Payroll Expenses to include crush labor | | | $ 7,624.00 | | |
| 1 Month Payroll Expense Marie Schutz/Jurgen Schutz | | | $ 6,500.00 | | |
| Payroll Taxes | | | $ 1,953.00 | | |
| Excise/Sales Tax | | | $ 3,500.00 | | |
| Office Supplies | | | $ 250.00 | | |
| Lab Supplies | | | $ 500.00 | | |
| Outside Labor | | | $ 750.00 | | |
| Export Certification Fees | | | $ 750.00 | | |
| Bank Service Charges | | | $ 100.00 | | |
| Dues & Subscriptions | | | $ 600.00 | | |
| Equipment Rental (Glycol Unit) | | | $ 5,000.00 | | |
| Insurance - Commercial | | | $ 3,000.00 | | |
| Insurance - Workers Comp | | | $ 1,000.00 | | |
| Miscellaneous | | | $ 500.00 | | |
| IRS Payment | | | $ 750.00 | | |
| Repairs & Maintenance & Landscaping | | | $ 1,500.00 | | |
| Shipping | | | $ 1,750.00 | | |
| Telephone | | | $ 610.00 | | |
| P G & E | | | $ 3,500.00 | | |
| Utilities - Garbage | | | $ 650.00 | | |
| Utilities - Other | | | $ 200.00 | | |
| | | | | | |
| Mechanics RE Loan | 8246557944 | P & I | $ 29,156.87 | | |
| Mechanics LOC Loan | 10048006 | P & I | $ 2,408.00 | | |
| SBA Loan | 31111460-01 | P & I | $ 16,298.45 | est. | |
| | | | | | |
| **Total Expenses** | | | $ 169,183.32 | | |
| | | | | | |
| **Estimated Position at Bank at end of 30 days** | | | $ 7,575.68 | | |